# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
MARIAN HASSAN MOHAMED        :      Civ. No. 3:18CV02015(SALM)
                             :
v.                           :
                             :
ANDREW M. SAUL,              :
COMMISIONER, SOCIAL SECURITY :
ADMINISTRATION[1]            :      August 20, 2019
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Marian Hassan Mohamed ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB"). Plaintiff has moved to reverse or remand the Commissioner's decision. [Doc. #23]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #25].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #23]** is

---

[1] Andrew M. Saul was confirmed as Commissioner of the Social Security Administration on June 4, 2019. He is now the proper defendant. <u>See</u> Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g). The Clerk of the Court is directed to update the docket accordingly.

**DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **GRANTED**.

I.  **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for DIB on September 9, 2016, alleging disability beginning May 23, 2016. See Certified Transcript of the Administrative Record, Doc. #21, compiled on January 24, 2019, (hereinafter "Tr.") at 202-03. Plaintiff later amended her alleged onset date to August 3, 2016. See Tr. 23, Tr. 55-56. Plaintiff's application was denied initially on November 30, 2016, see Tr. 146-56, and upon reconsideration on February 27, 2017. See Tr. 136-44.

On December 18, 2017, plaintiff, represented by Attorney Kevin Blake, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Brien Horan. See generally Tr. 42-74. Vocational Expert ("VE") Susan Gaudet appeared and testified by telephone at the administrative hearing. See Tr. 47, Tr. 74-84; see also Tr. 288-90. On January 2, 2018, the ALJ issued an unfavorable decision. See Tr. 20-41. On October 17, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making the ALJ's January 2, 2018,

---

[2] Simultaneously with her motion, plaintiff filed her Medical Chronology [Doc. #23-1], to which defendant filed a Responsive Medical Chronology [Doc. #25-1].

decision the final decision of the Commissioner. <u>See</u> Tr. 1-7.
The case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, now represented by Attorney Olia Yelner, timely
filed this action for review and moves to reverse the decision
of the Commissioner or alternatively to remand for a new
hearing. [Doc. #23]. On appeal, plaintiff argues that the ALJ
failed to develop the administrative record because he: (1)
failed to provide plaintiff with an English interpreter at the
administrative hearing; (2) failed to obtain certain medical
records and opinion evidence from plaintiff's treating
physicians; and (3) failed to obtain evidence from a medical
expert concerning plaintiff's off-task limitations.[3] <u>See</u>
<u>generally</u> Doc. #23-2 at 6-9. For the reasons stated below, the
Court finds that the ALJ did not err as contended.

## II.  <u>**STANDARD OF REVIEW**</u>

The review of a Social Security disability determination
involves two levels of inquiry. <u>First</u>, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. <u>Second</u>, the Court must decide whether
the determination is supported by substantial evidence. <u>See</u>
<u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). Substantial

---

[3] The Court has reordered the sequence of arguments as they
appear in plaintiff's brief.

evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v. Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision**." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order).

Finally, some of the Regulations cited in this decision, particularly those applicable to the review of medical source evidence, were amended effective March 27, 2017. Those "new regulations apply only to claims filed on or after March 27, 2017." Smith v. Comm'r, 731 F. App'x 28, 30 n.1 (2d Cir. 2018) (summary order). Where a plaintiff's claim for benefits was filed prior to March 27, 2017, "the Court reviews the ALJ's decision under the earlier regulations[.]" Rodriguez v. Colvin, No. 3:15CV1723(DFM), 2018 WL 4204436, at *4 n.6 (D. Conn. Sept. 4, 2018); White v. Comm'r, No. 17CV4524(JS), 2018 WL 4783974, at *4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the Court reviews the ALJ's decision under the earlier regulations because the Plaintiff's application was filed before the new regulations went into effect." (citation omitted)).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[] ... physical or mental ability to do basic work activities" to be considered "severe" (alterations added)).

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §404.1520. In the Second Circuit, the test is described as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform

given [her] residual functional capacity." <u>Gonzalez ex rel.</u> <u>Guzman v. Dep't of Health and Human Serv.</u>, 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added); <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009) (<u>per curiam</u>)). The residual functional capacity ("RFC") is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. <u>See</u> 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Bastien v. Califano</u>, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" <u>Id.</u> (quoting <u>Haberman v. Finch</u>, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV.  <u>THE ALJ'S DECISION</u>

Following the above-described evaluation process, the ALJ concluded that plaintiff "has not been under a disability within the meaning of the Social Security Act from the amended alleged onset date, August 3, 2016, through the date of" his decision, January 2, 2018. Tr. 24; <u>see also</u> Tr. 36. At step one, the ALJ

found that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of August 3, 2016. See Tr. 26. At step two, the ALJ found that plaintiff had the severe impairments of osteoarthritis in the bilateral knees and obesity. See id. The ALJ found plaintiff's right thumb injury, cholelithiasis, and injuries related to a past motor vehicle accident to be non-severe impairments. See Tr. 26-27. The ALJ concluded that plaintiff's "breast mass remains a nonmedically determinable impairment." Tr. 27.

At step three, the ALJ determined that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. See Tr. 27-28. The ALJ specifically considered Listing 1.02 (Major Dysfunction of a Joint) and concluded that plaintiff's "degenerative joint disease does not meet or medically equal" that listing. Tr. 27. The ALJ also "considered the potential impact of obesity in causing or contributing to co-existing impairments[,]" and found that "the evidence does not establish that the additional impact of the claimant's excess weight would meet or medically equal a relevant listing." Tr. 28. The ALJ next found that plaintiff had the RFC

to perform sedentary work as defined in 20 CFR
404.1567(a) except she is able to stand or walk up to
two hours and sit up to six hours in an eight-hour day,
with normal breaks. The claimant should avoid pushing
and/or pulling in lower extremities (including foot
controls). She is able to climb ramps or stairs
occasionally, but never climb ladders, ropes, or
scaffolds. The claimant is able to balance or stoop
frequently but no kneeling, crouching or crawling. She
is able to have occasional exposure to humidity and
wetness, but no exposure to extreme cold and unprotected
heights. The claimant would be off task 10 percent of
the time and miss one day a month, due to knee pain.

Tr. 28. At step four, the ALJ concluded that plaintiff was

"capable of performing past relevant work as an

Assembler/Electrical Accessories I." Tr. 34. The ALJ made

alternative findings at step five, and after considering

plaintiff's age, education, work experience and RFC, as well as

the testimony of the VE, the ALJ found that other jobs also

existed in significant numbers in the national economy that

plaintiff could perform. See Tr. 35-36.

## V. **DISCUSSION**

Plaintiff asserts several arguments in support of reversal

or remand. The Court addresses each in turn.

### A. Failure to Provide an Interpreter at the Administrative Hearing

Plaintiff asserts that although she "speaks some English,"

she does not speak enough and was unable to "participate fully

in her hearing." Doc. #23-2 at 8. Plaintiff asserts that her

inability to fully understand the questions asked of her at the

administrative hearing is significant for two reasons: first, because she was unable to adequately describe her past work; and second, because she was unable to adequately explain her injuries and symptoms. See id. Defendant responds, inter alia, "there is no evidence that Plaintiff was not able to understand, read, write, or speak English." Doc. #25 at 5.

The Social Security Administration's ("SSA") Program Operations Manual System ("POMS"), "while not binding, provide[s] guidance on this point." Sassower v. Berryhill, No. 17CV8257(NSR)(JCM), 2018 WL 7968910, at *4 n.5 (S.D.N.Y. Dec. 13, 2018), report and recommendation adopted, 2019 WL 926262 (Feb. 26, 2019); see also Tejada, 167 F.3d at 775 ("We recognize that the POMS guidelines have no legal force, and they do not bind the Commissioner." (citation and internal quotation marks omitted)). The POMS sets forth a policy for claimants with limited English proficiency, which is defined as "someone who has limited or no ability to read, write, speak or understand English." Social Security, POMS § DI 23040.001;[4] accord Zahirovic v. Astrue, No. 6:06CV981(NAM), 2008 WL 4519198, at *12 n.12 (N.D.N.Y. Sept. 30, 2008). "Disability determination services (DDS) will provide an interpreter (free of charge) to any

---

[4] http://policy.ssa.gov/poms.nsf/lnx/0423040001 (last visited June 7, 2019).

individual requesting language assistance, or when it is evident that such assistance is necessary to ensure that the individual is not disadvantaged." Id. In determining whether an interpreter is needed, DDS is to "[r]eview the claims folder for a foreign language indicator[,]" and if none is present, then to review "the following documents in the claims folder: Disability Report-Adult (SSA-3368-BK); Report of Contact (SSA-5002); Statement of Claimant or Other Person (SSA-795); Remarks in eView for electronic cases or on the Disability Transmittal Sheet for paper folders; or Any forms or documents that may indicate an interpreter is required." Id. (sic).

Here, the record does not support plaintiff's assertion that she required the assistance of an interpreter to participate fully in the administrative hearing. On plaintiff's Disability Report, she indicated that she could speak, read and understand English, and write more than her name in English. See Tr. 212; see also Tr. 222, Tr. 231 (Disability Reports affirmatively answering that plaintiff can "speak and understand English[]"). Plaintiff failed to assert on any of those forms that she preferred a language other than English. See Tr. 212, Tr. 222, Tr. 231. On September 13, 2016, plaintiff met with a DDS representative "in person[.]" Tr. 241. During that time, the DDS representative observed no difficulties with plaintiff's

ability to understand and answer (presumably in English). <u>See</u> <u>id.</u> Plaintiff additionally completed an Activities of Daily Living form in English, <u>see</u> Tr. 245-52, and was able to speak with a disability examiner without any noted difficulties, presumably also in English, <u>see</u> Tr. 90.

Plaintiff contends: "On numerous occasions Ms. Mohamed reported that she does not understand the question being asked of her (Tr. 58, 66). At other times, Ms. Mohamed provided answers that were clearly based on her misunderstanding of questions being asked (Tr. 50, 52)." Doc. #23-2 at 8. The Court's review of the administrative hearing transcript reflects that plaintiff was sufficiently able to communicate in English during that proceeding. <u>See generally</u> Tr. 42-73. After the two times plaintiff stated she did not understand a question, the ALJ clarified his question and plaintiff proceeded to answer the ALJ's line of questioning without issue. <u>See</u> Tr. 58, Tr. 66. As to the two times plaintiff allegedly misunderstood a question, on one occasion plaintiff's then-attorney clarified the record on behalf of plaintiff. <u>See</u> Tr. 50. On the second identified occasion, the Court's review of the transcript does not reveal any misunderstanding. <u>See</u> Tr. 52.

Plaintiff next asserts:

Notably, due to her language barrier, when asked "have you had any other medical visits this year besides the

one to Dr. Schlein?" Ms. Mohamed answered "no." (Tr.
70). A review of Ms. Mohamed's treatment history with
Bridgeport Family Medicine reveals that Ms. Mohamed had
at least two additional visits with Dr. Malik on January
30, 2017 and February 7, 2017.

Doc. #23-2 at 8. Plaintiff provides no record citation to
support the assertion that she saw Dr. Malik on January 30,
2017, or February 7, 2017. Regardless, the Court agrees with
defendant's argument on this point that plaintiff's omission is
not "proof of a language barrier[;]" it is more likely that
plaintiff simply forgot any appointments that occurred ten to
eleven months before the administrative hearing. Doc. #25 at 6.

Overall, plaintiff was adequately able to testify regarding
her conditions during the administrative hearing. She was also
able to provide adequate testimony concerning her past relevant
work. See Tr. 56-57; see also Tr. 255-70 (Work History Report
completed by plaintiff). Finally, the Court notes that at no
point before or during the administrative hearing did plaintiff
or her then-attorney request the assistance of an interpreter.

Thus, for the foregoing reasons, the Court finds plaintiff
was able to participate fully in the administrative hearing, and
"the unavailability of an interpreter at the hearing did not
prejudice the plaintiff during the course of h[er]
administrative proceedings." Zahirovic, 2008 WL 4519198, at *12.

B.  Failure to Develop the Administrative Record

Plaintiff next contends that the ALJ failed to develop the record in two respects: first, by failing to obtain opinions from plaintiff's treating physicians; and second, by failing to obtain certain medical records. See Doc. #23-2 at 6-7. Defendant responds that there is no gap in the record with respect to either category of documents. See Doc. #25 at 15.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation and internal quotation marks omitted). Accordingly, the duty to develop the administrative record is triggered "only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled." Walsh v. Colvin, No. 3:13CV687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (citation and quotation marks omitted).

"When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant, and plaintiff bears the burden of establishing such harmful error." Parker v. Colvin, No. 3:13CV1398(CSH)(JGM), 2015 WL 928299, at *12 (D. Conn. Mar. 4, 2015) (citation and quotation marks omitted); see also Santiago v. Astrue, No. 3:10CV937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) ("The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]").

### 1. Opinions from Plaintiff's Treating Physicians

Plaintiff contends that the ALJ should have obtained opinion evidence from her treating physicians, Dr. Schlein and Dr. Malik. See Doc. #23-2 at 6. Plaintiff appears to assert that the absence of these opinions created a gap in the record because there is "no treating physician opinion evidence that shed any light on plaintiff's residual functional capacity." Id. at 7 (citation and quotation marks omitted). Defendant responds that "the lack of a treating source opinion did not create a gap in the record because a formal opinion of Plaintiff's ability to perform work-related activities is not required." Doc. #25 at 11.

In connection with her argument that the ALJ failed to develop the record, plaintiff also appears to assert that the RFC determination is not supported by substantial evidence because it is not supported by a medical opinion. See generally Doc. #23-2 at 7. The RFC determination, however, does not need to "perfectly correspond with any of the opinions of medical sources[.]" Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Indeed, where "the record contains sufficient evidence from which an ALJ can assess claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (quotation marks and citations omitted); see also Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) ("[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity."). Thus, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta, 508 F. App'x at 56. Bearing that in mind, the Court considers each of plaintiff's arguments concerning the alleged lack of opinion evidence.

a)    Dr. Schlein

Although plaintiff contends that the ALJ failed to request an opinion from Dr. Schlein, it appears she is really arguing that the ALJ failed to contact Dr. Schlein for clarification of Dr. Schlein's October 5, 2016, "Excuse Slip" (hereinafter the "Excuse Slip"). See Doc. #23-2 at 7 ("The note in the record from Dr. Schlein, that the ALJ cited, which release Ms. Mohamed back to work in October of 2016 (Tr. 422) lists no functional limitations and does not describe what Ms. Mohamed can or cannot do." (sic)). Defendant responds that the ALJ was not obligated to contact Dr. Schlein because "the ALJ had a complete record upon which to base his decision." Doc. #25 at 13.

The Excuse Slip signed by Dr. Schlein stated that plaintiff was "released to work on 10-6-16[.]" Tr. 422. Although there is an area on that slip for "Restrictions[,]" Dr. Schlein identified none. See id. The ALJ deemed the Excuse Slip an opinion to which he afforded "significant weight because [Dr. Schlein] based his observations on MRIs and X-rays results and he operated on claimant's left knee." Tr. 33 (sic). The ALJ also noted: "Nearly six months later, in March 2017 and May 2017, she presented to Dr. Schlein again for right knee pain. It is noteworthy that Dr. Schlein did not provide any limitations relating to the claimant's right knee condition and he did not

change or revise his return to work statement." Tr. 34
(citations omitted).

"Assessing whether it was legal error for an ALJ to fail to
request clarification from a treating physician is a case-
specific inquiry that turns on whether an ALJ could reach an
informed decision based on the record." Prince v. Berryhill, 304
F. Supp. 3d 281, 289 (D. Conn. 2018).

The ALJ did not err by failing to contact Dr. Schlein
either for clarification of the Excuse Slip, or for an opinion
regarding plaintiff's functional limitations. Here, a reasonable
reading of Dr. Schlein's Excuse Slip, along with his
contemporaneous treatment records, supports the finding that
plaintiff was permitted to return to her work as a machine
operator without any restrictions. See Tr. 422 (Excuse Slip);
Tr. 291 (October 5, 2016, follow-up note: "She is given a note
that she can return to work. At this stage the patient is
walking without a cane or crutch and has no effusion in the left
knee."); Tr. 292 (September 8, 2016, follow-up note: "The
patient is two weeks post arthroscopy of the left knee. She is
doing well and is walking without the use of a cane or
crutch."). Physical therapy notes from this time period also
support that conclusion. See Tr. 377 (September 9, 2016,
physical therapy progress note: "Pt reports her knee is feeling

better. Went to MD yesterday who reports everything is looking good."); Tr. 379 (September 12, 2016, physical therapy progress note: "Pt reports her knee is feeling better."); Tr. 381 (September 19, 2016, physical therapy progress note: "Pt reports she feel she knee is going to get back to normal." (sic)); Tr. 388 (October 7, 2016, physical therapy progress note: "Pt with no pain noted with anterior and lateral step ups. Patient with decreased joint mobility in PF joint."); Tr. 390 (October 17, 2016, physical therapy progress note: "Pt with no pain noted with anterior and lateral step ups."); Tr. 391 (October 19, 2016, physical therapy progress note: "Pt reports her knee is feeling better but still has a little bit of pain."); Tr. 393 (October 26, 2016, physical therapy progress note: "Pt reports her knee isn't painful its just uncomfortable." (sic)); Tr. 395 (October 28, 2016, physical therapy progress note: "Patient tolerated strengthening exercises well today. No pain noted."); Tr. 401 (November 14, 2016, physical therapy process note: "Pt reports 'my knee is good now, its not the way it used to be. I don't have a lot of pain with stepping out of the car.'" (sic)); Tr. 366-67 (December 14, 2016, physical therapy record noting many of the therapy goals had been met); Tr. 367 (December 14, 2016, physical therapy record: "Patient has been seen for 20 visits and is progressing well through therapy. Patient has

increased LE strength, flexibility and ROM. Patient has improved mobility ... [and] is having no difficulty negotiating stairs[.]"). It was therefore reasonable for the ALJ to have assumed that if there had been restrictions associated with plaintiff's return to work, Dr. Schlein would have identified those in the space provided. See Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").

Additionally, there was sufficient evidence in the record from which the ALJ could assess plaintiff's RFC, without a function-by-function opinion from Dr. Schlein. Such evidence includes: over 100 pages of medical records, many of which reflected mild findings on examination or no pain, see, e.g., Tr. 299, Tr. 319, Tr. 332, Tr. 334, Tr. 368, Tr. 381, Tr. 383, Tr. 395, Tr. 409, Tr. 413, Tr. 417; objective medical reports, which also generally reflected mild findings, other than plaintiff's meniscus tears (one of which was surgically corrected), see Tr. 294, Tr. 418-19; plaintiff's testimony and reported activities of daily living, see Tr. 44-74, Tr. 245-52; and the opinion of the state-reviewing, non-examining physician, Dr. Phyllis Sandell, see Tr. 106-09 (limiting plaintiff to light work).

In this case, "the medical evidence shows relatively little physical impairment," and the "ALJ permissibly ... render[ed] a common sense judgment about functional capacity[.]" House v. Astrue, 5:11CV915(GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citation and internal quotation marks omitted); accord Gonzalez v. Berryhill, No. 3:17CV01385(SALM), 2018 WL 3956495, at *14 (D. Conn. Aug. 17, 2018). Indeed, in similar circumstances, "the Second Circuit has concluded that an ALJ was not under an obligation to further develop the record where the record contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors." Rivera v. Berryhill, No. 3:16CV01842(JAM), 2018 WL 1521824, at *4 (D. Conn. Mar. 28, 2018). Thus, the ALJ did not err by failing to contact Dr. Schlein given that the ALJ was able to reach an informed decision based on the record as whole. See Daniel v. Berryhill, No. 3:17CV01015(SALM), 2018 WL 2128380, at *11 (D. Conn. May 9, 2018).

Finally, plaintiff has failed to articulate how an opinion authored by Dr. Schlein containing functional limitations would be significant. Here, the record does not suggest that an opinion from Dr. Schlein would have been more limiting than the RFC determined by the ALJ, or that the ALJ necessarily would have credited that opinion. Indeed, as previously noted, Dr.

Schlein released plaintiff back to work during the relevant time period with <u>no</u> restrictions. <u>See</u> Tr. 422. Any retrospective opinion authored by Dr. Schlein that contradicted the findings set forth on the Excuse Slip likely would not be entitled to controlling weight. <u>See</u> 20 C.F.R. §404.1527(c)(4). Accordingly, there is no reasonable basis to believe that the ALJ's decision would have differed if he had the benefit of a function-by-function assessment from Dr. Schlein. Plaintiff has not met her burden in that regard. <u>See</u> <u>Lena v. Astrue</u>, No. 3:10CV893(SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) ("To demonstrate prejudice [plaintiff] must show that the additional medical reports would undermine the ALJ's decision." (citation and internal quotation marks omitted)).

Therefore, the ALJ did not err by failing to contact Dr. Schlein for an opinion regarding plaintiff's functional limitations.

### b) Dr. Malik

Plaintiff also asserts that the ALJ erred by failing to obtain an opinion from Dr. Malik. <u>See</u> Doc. #23-2 at 6-7. The Court again disagrees.

Dr. Malik is plaintiff's primary care physician, who also saw plaintiff for complaints of bilateral knee pain. <u>See</u> Tr. 331-356, Tr. 408-10. His findings on examination, however, were

relatively mild even <u>before</u> plaintiff had corrective surgery on her left knee. <u>See</u> Tr. 332, Tr. 334, Tr. 337, Tr. 340, Tr. 343, Tr. 346, Tr. 349, Tr. 409.

As previously stated, there was sufficient evidence in the record from which the ALJ could assess plaintiff's RFC, and the lack of opinion evidence from one of plaintiff's treating providers is not fatal to the ALJ's decision. <u>See</u> <u>Monroe</u>, 676 F. App'x at 8. Further, plaintiff has again failed to articulate how any opinion authored by Dr. Malik would be significant. <u>See</u> <u>Parker</u>, 2015 WL 928299, at *12. The record does not suggest that an opinion from Dr. Malik would have been more limiting than the RFC determined by the ALJ, or that the ALJ necessarily would have credited a more restrictive opinion from Dr. Malik given Dr. Malik's relatively mild findings on examination. Accordingly, there is no reasonable basis to believe that the ALJ's decision would have differed if he had an opinion from Dr. Malik. Plaintiff again has not met her burden in that regard. <u>See</u> <u>Lena</u>, 2012 WL 171305, at *9.

Therefore, the ALJ did not err by failing to obtain an opinion from Dr. Malik.

### 2. *Medical Records*

Plaintiff also contends that "there is an obvious gap in the medical record." Doc. #23-2 at 7. Plaintiff specifically

contends that the following records are missing: (1) records post-dating April 19, 2017; (2) records from Dr. Gary Friedlaender;[5] (3) records from "an orthopedic bracing specialist at the Hanger Clinic"; and (4) "at least two additional visits with Dr. Malik on January 30, 2017 and February 7, 2017." Doc. #23-2 at 7-8. The Court addresses each category of records, and defendant's response to plaintiff's arguments, in turn.

a)    Records after April 19, 2017

Plaintiff first contends: "On April 19, 2017 Ms. Mohamed has an MRI of her right knee which showed multiple disease processes (Tr. 418). This is the last note in the medical records. The hearing in this case was in December of 2017, meaning that eight months of medical records are missing." Doc. #23-2 at 7 (sic). That is incorrect. As defendant accurately responds, the last treatment note of record is Dr. Schlein's May 18, 2017, "Follow up Note[,]" which documented plaintiff's statement that "[h]er pain is not as bad as it was on the left side and she does not know if she wants to proceed with surgery." Tr. 414. Regardless, plaintiff fails to proffer any information concerning how the allegedly missing treatment

---

[5] There is a discrepancy between the spelling of Dr. Friedlaender's name in the record and as used by the parties in their briefing. The Court adopts the spelling reflected in the record at page 408.

records would be significant, or how they would undermine the ALJ's decision. Indeed, plaintiff fails to proffer any information concerning whether additional medical records from this time period even exist.

Additionally, records submitted to the Appeals Council that post-date the ALJ's decision support a finding that any such missing records would not be significant. For example, on February 6, 2018, plaintiff reported to her physical therapist that she experienced "pain in R knee 1 year ago that she saw Dr. Schlein for ... pain resolved with exercise." Tr. 12. Thus, the ALJ did not err by failing to obtain medical records post-dating April 19, 2017.

### b)    Records from Dr. Friedlaender

Plaintiff contends: "[O]n November 23, 2016, Ms. Mohamed was noted to be seeing Dr. Gary Friedlander in Milford for a second opinion on her left knee." Doc. #23-2 at 7 (sic) (citing Tr. 408). This is not an accurate summary of the record cited. Plaintiff presented to Dr. Malik on November 23, 2016, requesting a "second opinion for her left knee" and noted that she "want[ed] to see dr. gary friedlaender" in Milford, Connecticut. Tr. 408 (sic) (emphasis added). As defendant asserts, there is no indication that plaintiff actually saw Dr. Friedlaender for a second opinion. See Doc. #25 at 14. Indeed,

plaintiff testified that she never obtained a second opinion concerning her left knee. See Tr. 64. The ALJ noted this fact in his decision. See Tr. 31 ("[I]n November 2016, the claimant presented to Bridgeport Family Medicine, complaining of pain and expressing an interest in a second opinion. ... At the hearing she testified that she did not obtain a second opinion."). Accordingly, because the record contains no evidence that plaintiff treated with Dr. Friedlaender, the ALJ did not err by failing to obtain those nonexistent records.

### c) Records from the Hanger Clinic

Plaintiff next contends: "Ms. Mohamed was also noted to be seeing an orthopedic bracing specialist at the Hanger Clinic on numerous occasions (Tr. 402, 403, 405) but those medical noted are not in the record." Doc. #23-2 at 7-8 (sic). Although plaintiff's assertion is accurate, her argument ends there. Plaintiff fails to articulate how any records from the Hanger Clinic would be significant, that is, how inclusion of such records would undermine or alter the ALJ's decision. See Lena, 2012 WL 171305, at *9. Neither is the Court able to glean, based on the other evidence of record, how the inclusion of such records would undermine or otherwise alter the ALJ's decision. See Tr. 405-07. Thus, plaintiff has failed to meet her burden,

and remand is not warranted for the consideration of any records from the Hanger Clinic.

### d) Records from Dr. Malik

Plaintiff asserts, with no citation to the record, that "[a] review of Ms. Mohamed's treatment history with Bridgeport Family medicine reveals that Ms. Mohamed had at least two additional visits with Dr. Malik on January 30, 2017 and February 7, 2017." Doc. #23-2. A Disability Report dated March 24, 2017, notes that plaintiff saw Dr. Malik between January 2017 and March 2017. See Tr. 233. The form further states that plaintiff saw Dr. Malik for "knee injury, primary care[.]" Id. There is no indication in the record of the specific dates on which plaintiff may have seen Dr. Malik during these months.

Nevertheless, the Court is unable to conclude that these allegedly missing treatment notes would be significant, for several reasons. First, plaintiff makes no argument on that point. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Second, Dr. Malik is plaintiff's primary care physician. Accordingly, to the extent that he did see plaintiff on those two dates, it could have been for a litany of ailments

which may not be relevant to plaintiff's claims here. Third, even if plaintiff did see Dr. Malik for one of her knee impairments during those dates, the record from that general time period does not indicate that those records would have changed the ALJ's decision. Indeed, on March 18, 2017, Dr. Schlein saw plaintiff for right knee pain. See Tr. 413. During that visit, Dr. Schlein noted: "The patient returns to my office and the MRI indicates that she has chondromalacia and a tear of the medial meniscus. Her pain is not as bad as it was on the left side and she does not know if she wants to proceed with surgery." Id. A May 18, 2017, "Follow up Note" from Dr. Schlein reported similar findings. Tr. 414; see also Tr. 417 (April 3, 2017, "Follow up Note": "The patient returns to my office and is complaining of pain in the right knee. ... Examination reveals minimal tenderness under the patella. She is tender at the medial joint line and has a positive McMurray test. There is no effusion or instability.").

Thus, the ALJ did not err by failing to obtain medical records from Dr. Malik.

C.   RFC Finding Regarding Off Task Behavior

Last, plaintiff contends: "Without having opinion evidence from a treating physician, it is unclear what the ALJ relied upon to limited Ms. Mohamed to 10% off task behavior, as opposed

to 11% off task behavior which would prevent all work. The ALJ should have obtained testimony from a medical expert to clarify this issue." Doc. #23-2 at 9 (sic). Defendant responds that "the ALJ gave Plaintiff the benefit of the doubt" when making this finding, and that the absence of a physician's opinion on this limitation "is of no moment." Doc. #25 at 12. The Court construes plaintiff's argument as asserting that this aspect of the ALJ's RFC finding is not supported by substantial evidence.

As part of the RFC determination, the ALJ found: "The claimant would be off task 10 percent of the time and miss one day a month, due to knee pain." Tr. 28. Although plaintiff asserts that "it was unclear what the ALJ relied on to make this finding[,]" the Court is able to glean from the ALJ's decision that he gave plaintiff "the benefit of the doubt[]" when formulating the RFC, including plaintiff's time off-task. Tr. 34. It would appear that in providing an off-task percentage due to plaintiff's pain, the ALJ partially credited plaintiff's fluctuating complaints of pain, which are documented throughout the record. See, e.g., Tr. 65-68 (plaintiff's testimony regarding her bilateral knee pain); Tr. 245-52 (Activities of Daily Living Report); see generally Tr. 362-407 (physical therapy records documenting plaintiff's fluctuating complaints of pain).

Plaintiff points to "no evidence that [she] would be off task more than 10% of the time." Rivera v. Berryhill, No. 3:18CV143(AWT), 2019 WL 1292490, at *8 (D. Conn. Mar. 21, 2019). Even if she did, "where substantial evidence also supports the ALJ's determination, that determination must be affirmed." Id. Indeed, "[t]he fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence." Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016). Accordingly, the Court finds no error.

## VI.   CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #23]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #25]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 20th day of August, 2019.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE